**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CHRIS RUBI,**

      **Plaintiff,**

**v.**                                                          **No. 1:18-cv-00979**

**TOWN OF MOUNTAINAIR,**
**POLICE CHIEF ALFREDO C. TURRIETA,**
**SHAYNA NAZARIO, Mountainair Police Officer,**

      **Defendants.**

**COMPLAINT DUE TO DEPRIVATION OF CIVIL RIGHTS**
**AND MALICIOUS ABUSE OF PROCESS**

Plaintiff brings this action to recover damages for violations of his civil rights pursuant to 42 U.S.C. § 1983 and for retaliation and harassment under the color of law, including malicious prosecution and defamation by Defendant, with the intent to bring harm.

**PARTIES AND JURISDICTION**

1.      Plaintiff Chris Rubi is a resident of Torrance County, New Mexico.

2.      Defendant Town of Mountainair is a municipality located in Torrance County, New Mexico.

3.      Defendant Alfredo C. Turrieta is the Mountainair Chief of Police and is sued in his individual capacity acting under color of law, and in his professional capacity as relevant to all claims.

4.      Defendant Shayna Nazario is a Mountainair Police Officer and is sued in her individual capacity acting under color of law, and in her professional capacity as relevant to all claims.

1

**JURISDICTION AND VENUE**

5.      This action arises under 42 U.S.C. § 1983.

6.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Parties pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      The Court has authority to grant the requested relief pursuant to 28 U.S.C. § 1343(a)(1) and (2) and to redress the deprivation under 28 U.S.C. § 1343(a)(3). This Court also has authority to grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.   Venue lies in this district pursuant to 28 U.S.C. § 1391.

**BACKGROUND FACTS**

9.      Mr. Rubi has been the subject of harassment, public humiliation and a violation of his Constitutional rights.

10.     Mr. Rubi is employed by the Mountainair Public Schools.

11.     Mr. Rubi is an occasional, part time employee with Deer Canyon Preserve ("DCP") Homeowners' Association, and also provides various services such as landscaping and maintenance for a number of individuals who own property within DCP. (Exhibit 1 – Letter from Thomas F. Carroll, Deer Canyon Preserve; Exhibit 2 – Letter from Carleo, Homeowner Deer Canyon Preserve).

12.     On June 7, 2017 Mr. Rubi was at the DCP to perform maintenance services for one of the home owners. (Ex. 1).

13.     There were three young men selling large rocks immediately at the main entrance gate into DCP property. Mr. Rubi was requested by the DCP Homeowners Association to let the

young men know that they could not remain on DCP property, but that they could move their display approximately 50 feet away from the gate, to continue to sell their rocks. (Ex. 1)

14.     On June 8, 2017, at or about 2:45 pm, Mr. Rubi left the Mountainair Public School superintendent's office. (Exhibit 3 – Victim/Witness Statement, Mountainair Police Department).

15.     Mr. Rubi was headed South on Highway 55. (Ex. 3).

16.     Mr. Rubi observed a truck headed north on Highway 55 and the driver was flashing the truck's head lights at Mr. Rubi. (Ex. 3).

17.     The driver of the truck was Edward Padilla, Jr., a/k/a Popeye.

18.     Upon information and belief, Mr. Padilla is an employee of the City of Mountainair, in the Utility Service Department. It is believed that is employment hours are approximately 7:00 a.m. to 4:30 p.m.

19.     Mr. Padilla was driving the City of Mountainair Truck he uses for official work for the City.  (Ex. 3).

20.     As Mr. Rubi passed the vehicle driven by Mr. Padilla, the vehicle turned around and began following Mr. Rubi, with headlights still flashing.  (Ex. 3).

21.     Mr. Rubi slowed down to see if Mr. Padilla needed assistance.  Due to lack of shoulder on the Highway, Mr. Rubi parked in front of a storage area. (Ex. 3).

22.     Mr. Padilla parked straight across the street and was already crossing the road towards Mr. Rubi when Mr. Rubi stepped out of his vehicle. (Ex. 3).

23.     When Mr. Padilla got close to Mr. Rubi, he rushed at Mr. Rubi with both arms to his chest, pushing Mr. Rubi to the ground. (Ex. 3).

24.     Mr. Padilla then began yelling at Mr. Rubi about the latter's request on the

previous day, for the young men selling rocks to move away from the DCP gate. (Ex. 3).

25.     Mr. Padilla was angry, verbally threatened Mr. Rubi and physically assaulted

him.  Apparently one of the young men from the previous day, was Mr. Padilla's son.

26.     Mr. Padilla made physical threats to Mr. Rubi, stating that he would "…break all

your teeth and every fucking bone in your body!" (Ex. 3).

27.     Two bystanders came by and pulled Mr. Padilla away from Mr. Rubi. (Ex. 3).

28.     As he was being led away, Mr. Padilla stated to Mr. Rubi "I'm going to your

house after work…" again threatening physical violence against Plaintiff and Plaintiff's son.

(Ex. 3).

29.     After the verbal and physical assault by Mr. Padilla, Mr. Rubi drove to the

Mountainair Police Department and spoke with officer Shayna Nazario to file a police report.

(Ex. 3).

30.     Paramedics were called as Mr. Rubi has a heart condition. Plaintiff's wife drove

him to the hospital in Los Lunas. (Ex. 3; Exhibit 4 – Medical Records).

31.     Later, when Mr. Rubi went to the Mountainair Police Department to retrieve a

copy of the police report stemming from Mr. Padilla's attack, Plaintiff was instead issued a

citation for disorderly conduct.

32.     Plaintiff was ordered to appear before a Judge Riley. (Exhibit 5 – Citation).

33.     Mr. Rubi retained counsel to represent him.

34.     On June 21, 2017, the paralegal for WARBA, LLP contacted the Mountainair

Municipal Court requesting information for fax filing an entry of appearance.

35.     There was no answer to the call to the Mountainair Municipal Court, the paralegal

left a message. (Exhibit 6 – Affidavit of Pelletier).

36.     The person that returned Ms. Pelletier's telephone call presented themselves to her as Judge Riley and stated that it was unusual for someone to have representation at an arraignment. Staff for Mr. Rubi's attorney stated that Mr. Rubi had been attacked by the other individual and thus needed legal representation. (Ex. 6).

37.     The person identifying themselves as Judge Riley stated, "I know that's not true." (Ex. 6).

38.     Throughout the conversation, the individual identifying themself as Judge Riley proceeded to make several negative statements about Plaintiff and the event of June 8, 2018, so much so that it was eminently apparent that a fair hearing on the matter could not ensue.

39.     The individual representing themself as Judge Riley indicated that they had already determined Plaintiff's guilt, and advised Ms. Pelletier that "you might want to rethink this," *i.e* proceeding with hearing. (Ex. 6).

40.     At the arraignment in July, Mr. Rubi's counsel discussed the situation referenced above at paragraphs 31-39 with Judge Riley. Judge Riley agreed to recuse herself from the matter and have the charges reissued in another jurisdiction. (Ex. 6).

41.     To date, no charges have been re-issued.

42.     Mr. Rubi has requested a copy of the police report relevant to the June 8, 2018, verbal and physical attack of his person.

43.     It has been asserted by officials of the police department, for weeks on end, that the responsible officer, Shayna Nazario, has been out on training for weeks.

44.      Officer Shayna Nazario has returned to active duty, even after such alleged training, but to date, no police report has been provided.

45.     Mr. Rubi made an IPRA request to the police department for the report.

46.     Plaintiff has never received a response to that IPRA request.

47.     Mr. Rubi been the subject of physical assault, harassment and public humiliation by a perpetrator of a crime, and the responsible police unit failed to protect or investigate.

48.     Mr. Rubi has been subjected to harassment, public humiliation and abuse by the false representations by a Municipal Judge, made outside of the normal activities performed by a Judge.

49.     Plaintiff has been harmed by the false and malicious issuance of a charge of disorderly conduct, prosecution by the Town's law enforcement division, and lack of cooperation on the part of the Town's police force regarding requested documentation; he has also suffered very real physical and emotional harm.

## FIRST CAUSE OF ACTION:
## MALICIOUS PROSECUTION

50.     Plaintiff re-alleges each of the above paragraphs as if fully set forth herein.

51.     Defendants Turrietta and Nazario falsely charged Plaintiff with unjustified charges, without having performed any investigation, that were not supported in law or fact for the express purpose of harming and harassing Plaintiff.

52.     Rather than investigate the situation that is the center of this complaint, Defendant Nazario issued a citation to Plaintiff for disorderly conduct.

53.     Defendants Turrietta and Nazario have failed to file any police report of this incident and have not ever provided a police report to Plaintiff.

54.     Defendants deprived Plaintiff of his Fourteenth Amendment right to be free of any deprivation of liberty without due process of law, which included the full disclosure of information accessed during the investigation, when they failed to investigate the actions of Mr.

Padilla, a city of Mountainair employee.

55.     The actions taken by Mr. Padilla occurred during his normal working hours as a city of Mountainair employee.

56.     Defendants acted intentionally, recklessly or with malice with respect to the actions they took against Plaintiff, as described herein.

57.     No probable cause existed for Plaintiff's citation.

58.     The unlawful actions of Defendants, as described in the body of the complaint, caused damages, including emotional distress.

59.     The Defendants' actions were intentional, willful and wanton, as Defendants knew they did not have probable cause to legally effectuate, at any time, Plaintiff's citation and the charges contained therein.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – MUNICIPAL & SUPERVISOR LIABILITY FOR VIOLATIONS OF FEDERAL CONSTITUTIONAL RIGHTS BY PLAINTIFF AGAINST DEFENDANTS TOWN OF MOUNTAINAIR AND POLICE CHIEF TURRIETA

60.     Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

61.     Defendants Town of Mountainair and Chief of Police Alfredo C. Turrietta are authorized policymakers and responsible for creating, and adhering to, policies, procedures, and customs for the Police Department of the Town of Mountainair. These Defendants are therefore responsible for the hiring, supervision, and training of the Town of Mountainair's employees, contractors and agents.

62.     The policies, customs, decisions, and practices of Defendants Town of Mountainair and Police Chief Turrietta created a climate that led other Defendants consisting of officers to believe that they could act with impunity, violate civil rights, and otherwise conduct

themselves in the manner described herein.

63.     Defendants Town of Mountainair and Police Chief Turrietta failed to properly

train, supervise, and admonish Defendants.

64.     There is a causal connection between the Town of Mountainair's and Police Chief

Turrietta's failure to train, supervise, and admonish their employees and the violation of

Plaintiff's constitutional rights.

65.     Defendants failure to properly train, supervise, and admonish their employees

amounts to deliberate indifference.

66.     The policies, customs, decisions and practices of the Town of Mountainair and

Police Chief Turrietta along with their failure to train, supervise, and admonish were willful,

wanton, obdurate and in gross and reckless disregard of Plaintiff's rights.

67.     Defendants' acts and omissions caused plaintiff to suffer emotional distress and

attorneys' fees and costs.

### THIRD CAUSE OF ACTION
NEW MEXICO TORT CLAIMS ACT, NMSA 1978 § 41-4-1, et. seq. BY PLAINTIFF
AGAINST THE TOWN OF MOUNTAINAIR AND POLICE CHIEF TURRIETTA

68.     Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

69.     Defendants immunity is waived under the New Mexico Tort Claims Act, NMSA

1978 § 41-4-6 and/or NMSA 1978 § 41-4-12.

70.     The Defendants listed under this count intentionally and/or negligently failed to

conduct a proper investigation, failed to gather evidence, and initiated a charge against

Plaintiff with the knowledge that they had no probable cause or other lawful authority to do so.

71.     Defendants Turrieta and Nazario are "law enforcement officers," for purposes of

the New Mexico Tort Claims Act, and at all times relevant were acting within the course and

scope of their duties. Defendants Town of Mountainair and Police Chief Turrietta, are directly responsible to Plaintiff for the negligent and/or intentional acts and omissions of their respective employees under the doctrine of respondeat superior.

72.     Defendants listed under this count engaged in intentional, negligent, and reckless acts and omissions, without just cause or excuse, that these Defendants knew, or should have known, were reasonably expected to result in injuries suffered by Plaintiff.

73.     The Defendants listed under this count breached a duty of care they owed to Plaintiff that resulted in the deprivations of his rights and caused a loss of reputation and public humiliation as a result of his being falsely cited.

74.     Defendants listed under this count breached further duties to Plaintiff and committed the tort(s) of negligent hiring, supervision, training, discipline, and retention.

75.     The Defendants listed under this count engaged in acts and omissions which resulted in the commission of malicious prosecution, abuse of process, libel, slander, and defamation of character secured by the constitution and laws of the United States and the State of New Mexico.

76.     Defendants Town of Mountainair and Chief Police Turrietta each had a duty to supervise its employees, contractors and agents in order to ensure that they did not act negligently, grossly negligently, or recklessly in the operation or maintenance of their respective offices.

77.     Defendants Town of Mountainair and Chief Police Turrietta failed to implement appropriate policies and procedures regarding employee training, oversight of employees, discipline of employees, and other such policies and procedures as are reasonably necessary to ensure that Plaintiff would not be subjected to the tortious conduct described herein.

78.     Defendants conduct, described above, including the intentional, negligent and reckless acts and omissions, was the direct and proximate cause of injuries and damages suffered by Plaintiff, as set forth herein.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE NEW MEXICO
## INSPECTION OF PUBLIC RECORDS ACT (IPRA)

79.     Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

80.     This action is brought by Plaintiff against the Mountainair Police Department as a state entity of New Mexico, to enforce the provisions of the New Mexico Inspection of Public Records Act, NMSA § 1978 14-2-1, *et. seq.*

81.     The IPRA reflects the New Mexico Legislature's recognition "that a representative government is dependent upon an informed electorate" and embodies the Legislature's intention "that all persons are entitled to the greatest possible information regarding the affairs of the government and the official acts of public officers and employees." *Id.* at § 14-2-5.

82.     The IPRA provides that, with only some specified limitations, "[e]very person has a right to inspect public records of the state." *Id.* at § 14-2- 1A.

83.     Mr. Rubi made an IPRA request to the police department requesting the police department for the report of the incident surrounding the citations issued to him on November 10, 2017.

84.     This IPRA request was delivered on November 13, 2017 via USPS Certified Mail. (*See* Exhibit 7, USPS tracking history).

85.     To date, the Mountainair Police Department has never responded to Mr. Rubi's request.

86.     Pursuant to NMSA 1978 § 14-2-11, Defendants have violated the New Mexico Inspection of Public Records Act by failing to respond in the allotted amount of time to the IPRA request by the Plaintiff.

87.     Pursuant to NMSA 1978 § 14-2-11 (C) and NMSA 1978 § 14-2-12(D), Plaintiff is entitled to statutory damages, costs and reasonable attorneys' fees.

WHEREFORE, for the reasons discussed above, Plaintiff prays for judgment against the Defendants as follows:

A.  An award of full and fair compensatory, consequential and/or special damages against all Defendants, as set forth above:

B.  An award of punitive damages against all individuals regardless of whether that individual was acting under color of state law;

C.  An award of pre- and post-judgment interest on any amounts recovered herein;

D.  An award of the costs of bringing this civil action and reasonable attorneys' fees as permitted by law;

E.  Such other and further relief as the Court may deem appropriate under the circumstances of this case, including declaratory and injunctive relief.

## JURY DEMAND

A hearing by jury is requested.

Respectfully submitted this 22nd day of October, 2018

Western Agriculture, Resource
And Business Advocates, LLPL

*/s/ Dori E. Richards*
Dori E. Richards, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060

.

11