IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRIS RUBI,

        Plaintiff,

v.                                        CIV 18-0979 MV/KBM

TOWN OF MOUNTAINAIR, POLICE
CHIEF ALFREDO C. TURRIETA, and
SHAYNA NAZARIO, Mountainair
Police Officer,

        Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Opposed Motion to File Amended Complaint, filed on September 13, 2019. *Doc. 33*. Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion be DENIED.[1]

**I.    Factual and Procedural Background**[2]

On June 8, 2017, Mr. Chris Rubi was involved in an altercation with Mr. Edward Padilla, Jr., who is a municipal employee with the Town of Mountainair, New Mexico. *Docs. 19-1 ¶ 4; 19-2 ¶ 4; 27-1 ¶¶ 13-27; 33-1 ¶¶ 14-28*. Mr. Rubi filed a police report with Officer Shayna Nazario of the Mountainair Police Department (MPD). *Doc. 33-1*

---

[1] Judge Vazquez entered an Order of Reference on November 14, 2019, referring this case to the undersigned Magistrate Judge "to hear and determine Plaintiff's Opposed Motion to File Amended Complaint." *Doc. 37* (citing *Doc. 33*).

[2] The Court recites the facts as they appear in the original Complaint (Doc. 1), the proposed Amended Complaint (Doc. 33-1), and the record (Docs. 19-1–19-5, 27-1–27-2, 34-1–34-2) in a light most favorable to Plaintiff.

¶ 29. Officer Nazario took statements about the altercation from Mr. Rubi, Mr. Padilla, and an alleged witness, Ms. Andrea Reynaga. *Doc. 19-1* ¶¶ 4-15. According to Officer Nazario, each man involved blamed the other for starting the altercation, each man accused the other of threatening to physically injure him, and Mr. Rubi asserted that Mr. Padilla pushed him to the ground. *Doc. 19-1* ¶¶ 5-10, 12-14. Ms. Reynaga, who spoke to Officer Nazario and provided a written statement, stated that she saw both men yelling and cursing at each other. *Docs. 19-1* ¶¶ 15-19; *19-1-A*. She heard Mr. Rubi say, "I'm gonna kick your ass[,]" and Mr. Padilla reply, "Well let's go, bitch." *Doc. 19-1-A* at 2. "Mr. Rubi disagrees with both Mr. Padilla's and Ms. Reynaga's versions of the altercation, but he does not dispute that each gave their statements to Officer Nazario." *Doc. 32* at 2 (citing *Doc. 27* at 2).

Officer Nazario consulted with Deputy District Attorney Ray Sharbutt and informed him that "she had an eye witness to the dispute" but was unsure whether she could file charges against Mr. Padilla, since he and Officer Nazario shared an employer—the Town of Mountainair. *Doc. 19-2* ¶ 4; *see also Doc. 19-1* ¶ 22. "Mr. Sharbutt 'advised Officer Nazario to issue non-traffic citations for disorderly conduct' pursuant to Mountainair Ordinance § 7-1-5 to both Mr. Rubi and Mr. Padilla." *Doc. 32* at 2 (quoting *Doc. 19-2* ¶ 4; citing *Doc. 19-1* ¶ 22; Town of Mountainair, Code of Ordinances § 7-1-5[3]).

---

[3] The Code of Ordinances is available on the Town of Mountainair website, "Documents" tab, at the link marked "Ordinances." Select the "Municipal Code" folder, then select Chapter VII "Morals and Conduct." *See* Town of Mountainair, https://mountainairnm.gov/documents (last visited Dec. 11, 2019). The relevant portion of the ordinance provides:
   Disorderly conduct consists of either:

"Mr. Rubi retained an attorney for his July 5, 2017 arraignment in Mountainair Municipal Court." *Id.* at 3 (citing *Docs. 19-3* ¶ 6; *19-3-A*; *27-1* ¶¶ 30, 32). His attorney's paralegal spoke with Judge Riley of the municipal court. *See Docs. 1-6* ¶¶ 3-4. "Judge Riley expressed surprise that Mr. Rubi would need an attorney for an arraignment." *Doc. 32* at 3 (citing *Doc. 1-6* ¶ 9). "The paralegal explained that Mr. Rubi 'had been attacked by [Mr. Padilla] and . . . felt he needed legal representation.'" *Id.* (quoting *Doc. 1-6* ¶ 10). "Judge Riley responded, 'I know that's not true' and stated that she had already heard about the situation and understood that Mr. Rubi had caused trouble at City Hall." *Id.* (quoting *Doc. 1-6* ¶¶ 11-12). Judge Riley later recused herself from the case and instructed former Mountainair Police Chief Alfredo C. Turrieta to refile the citation in another jurisdiction. *See Docs. 19-2* ¶ 7; *19-3* ¶ 10; *19-3-B*; *27-2* ¶ 10. "Neither Officer Nazario nor Chief Turrieta has ever reissued the citation." *Doc. 32* at 3 (citing *Docs. 19-1* ¶ 25; *19-4* ¶ 7; *19-5* ¶¶ 3-4).

Mr. Rubi filed his original "Complaint Due to Deprivation of Civil Rights and Malicious Abuse of Process" in this Court on October 22, 2018. *Doc. 1*. He asserted claims for malicious prosecution pursuant to 42 U.S.C. § 1983; claims for municipal and supervisory liability pursuant to § 1983; violations of the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-6 and 41-4-12 (1978) (NMTCA); and a violation of the New Mexico Inspection of Public Records Act, N.M. Stat. Ann. § 14-2-1–12 (1978). *See id.*

---

A.   Engaging in any public place in a violent, abusive[,] indecent, or otherwise disorderly conduct which creates a clear and present danger of violence; or . . .
E.   Using in any public place fighting words which by their very utterance are likely to provoke a violent reaction in an average person to whom such words are addressed.

Mountainair Ordinance § 7-1-5(A), (E).

Defendants moved for summary judgment on the malicious prosecution and NMTCA claims (*Doc. 19*) and moved to dismiss the municipal and supervisory liability claim (*Doc. 9*). Judge Vazquez granted summary judgment with respect to the malicious prosecution claim, dismissed the municipal and supervisory liability claim, and granted summary judgment in part with respect to the NMTCA claims. *See Doc. 32*. Only two state law claims remained: malicious abuse of process under § 41-4-12 and the IPRA claim. *Id.* at 13. The Court allowed Mr. Rubi 30 days to file a motion to amend his complaint. *Id.*

Mr. Rubi now moves to amend his complaint to add a federal claim for retaliatory prosecution pursuant to the First Amendment. *Doc. 33* at 1. As that is the only claim in the Amended Complaint, he has abandoned his two remaining state law claims. *See Doc. 33-1*. Defendants oppose the motion on the basis of futility. *Doc. 34*.

## II.    Legal Standards

Federal Rule of Civil Procedure 15 allows a party to amend its pleading once as a matter of course in limited circumstances. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading with the "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 directs that leave shall be freely given "when justice so requires." *Id.* "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). A court may deny a motion for leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

4

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Usually, "[t]he futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (citations omitted). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quotation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

There are situations, however, when the Court may take judicial notice of undisputed facts that are established in the case record, and this is such a case. As the Tenth Circuit has noted, "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *Bauchman v. W. High Sch.*, 132 F.3d 542, 561 (10th Cir.1997)). As discussed below, some material allegations in the proposed amended complaint here directly contradict facts

established on the earlier motion for summary judgment, and the discrepancies cannot be ignored.

## III. Discussion

To state a claim for retaliatory prosecution, Mr. Rubi must demonstrate that: (1) "he was engaged in a constitutionally protected activity;" (2) that the defendant official's "action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" (3) the official's "action was substantially motivated as a response to his exercise of his First Amendment speech rights[;]" *Cowley v. W. Valley City*, 782 F. App'x 712, 720 (10th Cir. 2019) (quoting *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (brackets omitted)), and (4) that the official urging prosecution had "a retaliatory motive . . . combined with an absence of probable cause[,]" *id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 265 (2006); citing *Becker*, 494 F.3d at 925). Here, Mr. Rubi submits that he complained about a municipal employee—a constitutionally protected activity (*Doc. 33-1* ¶ 29); Officer Nazario and Chief Turrieta cited him in retaliation for his complaint (*id.* ¶ 52); their "express purpose" in citing him was to harm and harass him in retaliation for his complaint (*id.*); and they did not have probable cause to cite him (*id.* ¶ 58).

Defendants argue that the motion to amend is futile and should be denied on qualified immunity grounds because arguable probable cause existed to cite Mr. Rubi for disorderly conduct. *See Doc. 34* at 4-8. Mr. Rubi agrees that "the core issue before the Court" is whether there is "arguable probable cause[,]" which is necessary to maintain his claim for retaliatory prosecution. *Doc. 35* at 1 (citation omitted).

6

In analyzing a motion to dismiss a First Amendment retaliatory prosecution claim, the Court must determine whether the defendant officer had arguable probable cause. *Fenn v. City of Truth or Consequences*, No. 2:18-CV-00634 WJ/GW, 2019 WL 943518, at *3 (D.N.M. Feb. 26, 2019) (citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 931-32 (10th Cir. 2015)). "Arguable probable cause exists where 'a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.* at *4 (quoting *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014)). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)).

Defendants submit that the Amended Complaint ignores and contradicts evidence established in the record. *Doc. 34* at 3-5. In relevant part, Mr. Rubi summarily states that Officer Nazario and Chief Turrieta charged him with disorderly conduct "without having performed any investigation . . . ." *Doc. 33-1* ¶ 52. This allegation is flatly contradicted by the record established on summary judgment. Defendants point to Officer Nazario's affidavit, in which she stated that she took statements from Mr. Rubi, Mr. Padilla, and Ms. Reynaga on June 8, 2017. *See Doc. 19-1* ¶¶ 4-10, 12, 15, 19; *see also Docs. 19-1-A* (Ms. Reynaga's written statement, dated June 8, 2017); *34* at 3 (citing *Doc. 19* at 4). As the Court noted in its August 15, 2019 Memorandum Opinion and Order, "Mr. Rubi disagrees with both Mr. Padilla's and Ms. Reynaga's versions of the altercation, but he does not dispute that each gave their statements to Officer

7

Nazario." *Doc. 32* at 2 (citing *Doc. 27* at 2). In his reply brief, Mr. Rubi acknowledges that Officer Nazario took "clearly conflicting statements" from the three individuals but does not explain why her efforts do not qualify as an investigation. *See Doc. 35* at 2.

Defendants next contend that Officer Nazario's investigation provided arguable probable cause to issue the disorderly conduct citation. *See Doc. 34* at 6-8. The Mountainair Ordinance defines disorderly conduct in relevant part as either "[e]ngaging in any public place in a violent, abusive[,] indecent, or otherwise disorderly conduct which creates a clear and present danger of violence or . . . [u]sing in any public place fighting words which by their very utterance are likely to provoke a violent reaction in an average person to whom such words are addressed." Mountainair Ordinance § 7-1-5(A), (E). Examining N.M. Stat. Ann. § 30-20-1A, the state counterpart to § 7-1-5, the Tenth Circuit has noted:

> Under New Mexico law, disorderly conduct must meet two requirements. The first requirement is that the conduct itself fall into one of the categories enumerated in the statute by being violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly. [N.M. Stat. Ann. § 30-20-1(A).] The second prong measures the potential effect of the conduct on others, requiring that it "tend to disturb the peace." *New Mexico v. Oden*, 484 P.2d 1273, 1274 (N.M. Ct. App. 1971) (holding that "tend to disturb the peace" is an independent element of disorderly conduct). Disturbing the peace requires "an act of violence, or . . . an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *New Mexico v. Florstedt*, 419 P.2d 248, 249 (N.M. 1966).

*Fogarty v. Gallegos*, 523 F.3d 1147, 1156-57 (10th Cir. 2008).

Thus, under the first prong Defendants must show that Officer Nazario had probable cause to believe that Mr. Rubi was either (A) engaging in "violent, abusive[,] indecent, or otherwise disorderly conduct" or (B) using "fighting words" in a public place. *See New Mexico v. Salas*, 986 P.2d 482, 486 (N.M. Ct. App. 1999). The record

8

evidence shows that Officer Nazario took statements from Mr. Padilla and Ms. Reynaga, both of whom averred that Mr. Rubi threatened to "kick [Mr. Padilla's] ass." *See Docs. 19-1* ¶¶ 13, 18; *19-1-A* at 2.

Mr. Rubi argues not that the alleged statements do not meet the first prong of a disorderly conduct charge,[4] but that Officer Nazario relied too heavily on Mr. Padilla's and Ms. Reynaga's versions of the altercation and failed to question two other alleged witnesses. *See Doc. 35* at 2. He fails to cite any authority to support his argument. *Id.* As Defendants correctly observe, Officer Nazario was "entitled to rely on the statement of a witness unless there is some reason to believe the information is not reasonably trustworthy." *Doc. 34* at 7 (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)); *see also Lassiter v. Carver*, No. 16-CV-1008 SMV/CG, 2017 WL 3208531, at *3 (D.N.M. May 1, 2017) ("A police officer can base a probable cause determination on a witness's statement alone.") (citing *Romero*, 45 F.3d at 1476). Mr. Rubi claims that Officer Nazario knew that Ms. Reynaga has a 2013 felony narcotic conviction; he does not explain why this would make her inherently incredible, however. *Doc. 35* at 2. The Tenth Circuit has also found that an officer who has "interview[ed] witnesses and conclude[d] probable cause exists to arrest" is not then obligated to interview potential alibi witnesses. *See Romero*, 45 F.3d at 1476. Mr. Rubi fails to cite any authority to support his proposition that Officer Nazario erred in failing to seek out the other two witnesses

---

[4] Nor, the undersigned posits, could he so argue. The Tenth Circuit has held that "the very definition of 'fighting words,'" is "words [that] cause [somebody] to fight or become angry[.]" *York v. City of Las Cruces*, No. CV 06-683 MCA/CEG, 2007 WL 9734088, at *5 (D.N.M. May 31, 2007), *aff'd*, 523 F.3d 1205 (10th Cir. 2008) (quoting *Johnson v. Campbell*, 332 F.3d 199, 213 (3d Cir. 2003)). As explained below, the facts here clearly support a finding that Officer Nazario reasonably believed that Mr. Rubi used fighting words.

before issuing the citation. *See Doc. 35* at 2. Thus, Defendants have met their burden to show that Officer Nazario had probable cause to believe that Mr. Rubi had engaged in "violent, abusive[,] indecent, or otherwise disorderly conduct" or had used "fighting words" in a public place.

As to the second prong, Defendants must show that Officer Nazario had probable cause to believe that Mr. Rubi's words and/or conduct "create[d] a clear and present danger of violence or" were "likely to provoke a violent reaction in an average person to whom such words are addressed." *See* Mountainair Ordinance § 7-1-5(A), (E); *see also Salas*, 986 P.2d at 486-87. Again, Mr. Rubi does not argue that his alleged conduct would not have created a danger of violence or provoked a violent reaction in an average person, but argues that there is "a genuine dispute of material fact . . . as to whether . . . Officer Nazario's [sic] *reasonably believe[d]* that probable cause existed." *Doc. 35* at 2. The undersigned disagrees. Ms. Reynaga told Officer Nazario that after Mr. Rubi threatened to "kick [Mr. Padilla's] ass[,]" Mr. Padilla accepted the proffered "invitation to exchange fisticuffs[,]"*Johnson*, 332 F.3d at 212 (quotation omitted), and responded, "Well let's go, bitch." *Doc. 19-1-A* at 2. It was at that point that Ms. Reynaga physically separated the two men. *Docs. 19-1* ¶ 18; *19-1-A* at 2. It is clear that Officer Nazario had information that would lead a reasonable officer to conclude that Mr. Rubi's words had provoked a violent reaction.

As the record clearly demonstrates, Officer Nazario made the objectively reasonable conclusion—even if she was ultimately mistaken—that arguable probable cause existed to cite Mr. Rubi for disorderly conduct. Because Mr. Rubi cannot show that Officer Nazario or Chief Turrieta lacked arguable probable cause in citing him for

10

disorderly conduct, the Amended Complaint is futile – it could not survive a motion to for summary judgment given the undisputed facts already established in the record.[5] Thus, the undersigned recommends that the Court deny Mr. Rubi's motion to amend.

## IV. Conclusion and Recommendation

I recommend the Court find that Mr. Rubi cannot demonstrate that Officer Nazario or Chief Turrieta lacked arguable probable cause to cite him for disorderly conduct. As a result, the undersigned recommends that the Court deny the motion to amend as futile.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Opposed Motion to File Amended Complaint (*Doc. 33*) be denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] The *Hartman* Court opined that in very rare cases, a lack of probable cause may not be dispositive, as "its presence does not guarantee that inducement was not the but-for fact in a prosecutor's [charging] decision." 547 U.S. at 265. Mr. Rubi does not allege that Defendants had such a retaliatory animus. *See Doc. 33-1*. Further, the undersigned does not believe any such allegation would be plausible where Officer Nazario sought advice from the Assistant District Attorney before issuing the citation, and where she issued an identical citation to Mr. Padilla. *See Docs. 19-1* ¶ 22; *19-2* ¶ 5.